57 F.3d 411
 Adeline McFarland MYELLE, individually and as administratrix
of the Estate of Leonard Myelle, deceased; Elizabeth
Myelle; Kimberly Ann McFarland; Phyllis McFarland
Rinfrette; Michelle McFarland, Plaintiffs-Appellants,
v.
AMERICAN CYANAMID COMPANY; Southeastern Boll Weevil
Eradication Foundation, Incorporated; Don McNeil's Flying
Service, a/k/a Don's Flying Service; South Carolina Elect;
Don McNeil, individually; Linda McNeil, individually;
Scana Corporation, Defendants-Appellees.
 No. 94-1634.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 6, 1995.
Decided June 21, 1995.
 
 ARGUED: John Stone Bagby, Jr., Bagby & Associates, Philadelphia, PA, for appellants. Robert L. White, White, Tucker & Cleaves, P.A., Memphis, TN, for appellees. ON BRIEF: Robert A. Tucker, White, Tucker & Cleaves, P.A., Memphis, TN, and John F. Beach, Columbia, SC, for appellee Foundation; Thomas R. Gottshall, Sinkler & Boyd, P.A., Columbia, SC, for appellee American Cyanamid; George C. Kosko, Law Offices of George C. Kosko, P.A., Pawley's Island, SC, for appellee McNeil's.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and LUTTIG and MICHAEL, Circuit Judges.
 Affirmed by published opinion. Judge LUTTIG wrote the majority opinion, in which Justice POWELL joined. Judge MICHAEL wrote a dissenting opinion.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Leonard Myelle, a resident of Pennsylvania, died in a plane crash in South Carolina in September 1990, while he was engaged in cotton crop dusting as part of a campaign to eradicate boll weevils. His wife, the appellant Adeline Myelle, brought an action alleging wrongful death and related claims against the appellees in the United States District Court for the Eastern District of Pennsylvania.[1] Finding that it lacked personal jurisdiction over certain of the defendants, and that venue was in any event improper, that court transferred Myelle's action to the District of South Carolina, "pursuant to 28 U.S.C. Sec. 1406(a),[2] and/or alternatively, pursuant to 28 U.S.C. Sec. 1404(a)."[3] Following this transfer, the District of South Carolina dismissed Myelle's action because she had failed to comply with certain registration requirements which the state of South Carolina imposes on out-of-state executors. This appeal followed.
 
 I.
 
 2
 The principal question we consider in this appeal is whether the District of South Carolina erred in ruling that Myelle's capacity to maintain a wrongful death action is governed by South Carolina law, rather than by Pennsylvania law. Had the case been transferred pursuant only to 28 U.S.C. Sec. 1406(a), this question would easily be answered in the negative, for it is well settled in this circuit that "a district court receiving a case under the mandatory transfer provisions of Sec. 1406(a) must apply the law of the state in which it is held rather than the law of the transferor district court." LaVay Corp. v. Dominion Federal Savings & Loan Ass'n, 830 F.2d 522, 526 (4th Cir.1987), cert. denied, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988); see also Proctor & Schwartz, Inc. v. Rollins, 634 F.2d 738 (4th Cir.1980). The question is somewhat more difficult in this case, however, because the Eastern District of Pennsylvania expressly stated that it was transferring Myelle's action pursuant to both 28 U.S.C. Sec. 1406(a) and 28 U.S.C. Sec. 1404(a).
 
 
 3
 Myelle argues that the Supreme Court's decision in Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), requires application of the law of the transferor state--in this case Pennsylvania--following the transfer of an action under 28 U.S.C. Sec. 1404(a). We reject this argument, because it is based on a misreading of Van Dusen. Although the Court stated in Van Dusen that "the transferee district court must under Sec. 1404(a) apply the laws of the State of the transferor district court," and, even more specifically, that "the capacity to sue will also be governed by the laws of the transferor State," id. at 642, 84 S.Ct. at 822, "the laws of the transferor State" to be applied by the transferee court include the transferor's choice-of-law rules. See Ferens v. John Deere Co., 494 U.S. 516, 519, 110 S.Ct. 1274, 1277, 108 L.Ed.2d 443 (1990) ("In Van Dusen ... we held that, following a transfer under Sec. 1404(a) initiated by a defendant, the transferee court must follow the choice-of-law rules that prevailed in the transferor court.").[4]
 
 
 4
 In this case, the choice-of-law rules of Pennsylvania call for the application of South Carolina law to determine Myelle's capacity to sue. Pennsylvania courts follow an "interest-balancing" approach in resolving choice-of-law questions. See Griffith v. United Air Lines, 416 Pa. 1, 203 A.2d 796 (1964); Troxel v. A.I. duPont Inst., 431 Pa.Super. 464, 636 A.2d 1179 (1994). As the Eastern District of Pennsylvania noted in declaring South Carolina the more appropriate forum, South Carolina has a far greater interest in the outcome of this case than does Pennsylvania:
 
 
 5
 All relevant events transpired in South Carolina. Don and Linda McNeil reside in South Carolina and Don's Flying Service is located in South Carolina.... Several if not all of McNeil's and Boll Weevil's lay witnesses and expert witnesses are located in South Carolina. Resolution to [sic] any and all issues of liability, i.e., questions concerning what caused the airplane to crash, will be determined after conducting inspections and examining evidence in South Carolina.
 
 
 6
 Accord Kleinschmidt v. Universal Seafood Co., 201 F.Supp. 96, 98 (E.D.Pa.1961) ("Since, apparently, injury and death occurred in New Jersey, a Federal Court sitting in Pennsylvania must apply New Jersey law to determine whether a cause of action exists and the capacity of the party authorized to initiate proceedings."). Because South Carolina capacity-to-sue law is "the state law that would have been applied if there had been no change of venue," the Sec. 1404(a) transfer required the application of South Carolina law to determine Myelle's capacity to sue. Van Dusen, 376 U.S. at 639, 84 S.Ct. at 820. Thus, whether Myelle's action is understood as having been transferred under Sec. 1406(a) or Sec. 1404(a), her capacity to sue was indeed a question of South Carolina law.
 
 II.
 
 7
 Myelle contends that even if the district court was correct to apply South Carolina law in determining her capacity to sue, the dismissal of her action must be reversed because the district court misapplied South Carolina capacity-to-sue law. Once again, we find Myelle's argument to be without merit. Under South Carolina law, a foreign administratrix such as Myelle may acquire the powers of a local personal representative--including the power to maintain a wrongful death action--only by filing in South Carolina probate court authenticated copies of her appointment and bond. See S.C.Code Ann. Sec. 62-4-205; Thomas v. Grayson, --- S.C. ----, 456 S.E.2d 377 (1995). Myelle has not yet filed these documents, and therefore is not entitled to maintain the wrongful death action.[5] The dismissal of her action was therefore entirely proper.
 
 CONCLUSION
 
 8
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 9
 AFFIRMED.
 
 MICHAEL, Circuit Judge, dissenting:
 
 10
 Leonard Myelle, a resident of Pennsylvania, died in a plane crash in South Carolina. Adeline Myelle, Leonard's common law wife, was duly appointed in Pennsylvania to be administratrix of Leonard's estate. Ms. Myelle and Leonard's daughters, all residents of Pennsylvania, filed three separate actions against the defendants, one in federal court in the Eastern District of Pennsylvania and the other two in Pennsylvania state courts. Defendants successfully removed the two state cases to the Eastern District of Pennsylvania, where all three actions were consolidated. Defendants then had the entire case transferred to the District of South Carolina. After the transfer, defendants moved to dismiss on the ground that Ms. Myelle lacked the capacity to sue in South Carolina. Under defendants' theory, her failure to register in South Carolina before the complaint was filed in Pennsylvania, or at least before the transfer, rendered her lawsuit a nullity when the transfer order was entered. The district court, relying on stale South Carolina law that has since been repudiated, granted (with some indication of regret) the motion to dismiss. Remarkably, the majority here affirms. Unlike the majority, I am not driven by the fact that Ms. Myelle has yet to go through the ministerial process of qualifying as a representative in South Carolina by filing in probate court authenticated copies of her Pennsylvania appointment and bond. Accordingly, I dissent with all respect for the majority.
 
 I.
 
 11
 Defendants moved to dismiss this wrongful death action on the ground that plaintiffs lacked the capacity to sue. Defendants observed that, although Ms. Myelle was qualified in Pennsylvania to be administratrix of Leonard's estate, she was not a qualified representative in South Carolina because she had not registered her foreign appointment there. Specifically, she did not file in South Carolina probate court authenticated copies of her Pennsylvania appointment and bond. See S.C.Code Ann. Secs. 62-4-204, 62-4-205. And, defendants argued, because South Carolina's statute of limitations on the wrongful death action had run, it was too late for Ms. Myelle to register locally, for that registration could not relate back to the date the complaint was filed.
 
 
 12
 Plaintiffs responded that South Carolina did not require Ms. Myelle to register in South Carolina because (i) Leonard left no property or assets in South Carolina and, alternatively, because (ii) the case was in federal court. The district court did not err in rejecting these arguments.
 
 
 13
 But plaintiffs also urged that if South Carolina law actually required Ms. Myelle to register her foreign appointment, it was merely a procedural matter that could be cured if Ms. Myelle were to register accordingly and if the court would allow that registration to relate back to the time the complaint was filed. As to this argument the district court said: "[T]his court sought some basis for allowing these cases to proceed. No such basis is available, since the holding of Glenn v. E.I. DuPont De Nemours & Co., [254 S.C. 128] 174 S.E.2d 155 (1970) bars using the 'relation back doctrine' to allow plaintiff to register her Pennsylvania appointment now." JA 343.[1] As I read the district court's opinion, had the court not felt constrained by Glenn, Ms. Myelle could have registered her Pennsylvania appointment locally, and the court would have allowed that registration to relate back to the date the complaint was filed. In other words, but for Glenn the district court would have allowed Ms. Myelle to amend her complaint to reflect her capacity to sue in South Carolina.
 
 
 14
 As luck would have it, after the district court rendered its decision, the Supreme Court of South Carolina unanimously repudiated the antiquated Glenn rule. In Thomas v. Grayson, --- S.C. ----, 456 S.E.2d 377 (1995), the court held that so long as a wrongful death complaint is filed within the limitations period, it does not matter that plaintiff lacks the capacity to sue when the complaint is filed or even before the limitations period runs. Rather, a foreign representative can register in South Carolina after the limitations period runs, and the registration will relate back to the date the complaint was filed. The court explained that "the acts of the probate court [under Secs. 62-4-204 and 62-4-205] regarding personal representatives appointed in another state are ministerial," 456 S.E.2d at 379, and that abandoning the Glenn rule "prevents the defendant from defeating the plaintiff's claim on a technicality in the pleading," id. at 380.[2]
 
 
 15
 South Carolina law has thus changed, and indeed the very case relied on by the district court has been overruled. Consequently, assuming arguendo that state law applies on the relation-back issue, I would remand this case with instructions to grant Ms. Myelle leave to register locally and to amend her complaint to reflect her capacity to sue. In my view the Supreme Court of South Carolina would allow Ms. Myelle's suit to go forward even though she has yet to go through the "ministerial" process of filing in probate court copies of her Pennsylvania appointment and bond. The Supreme Court of South Carolina surely would "prevent[ ] the defendant[s] from defeating the [plaintiffs'] claim on a technicality in the pleading," id. If state law indeed applies on the relation-back issue, then, as a federal court sitting in diversity, we are bound to deal with the issue as would the Supreme Court of South Carolina.
 
 
 16
 This assumes, as the majority apparently does, that the district court was correct in even looking to state law on the relation-back issue. I question this assumption. In Davis v. Piper Aircraft Corp., 615 F.2d 606 (4th Cir.1980), cert. dismissed, 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980), a foreign representative filed a wrongful death action in North Carolina five days before the end of the limitations period. Months later he was appointed in North Carolina to be administrator of the estate, and he filed a motion to amend his complaint to reflect his capacity to sue there. Defendants argued that North Carolina law governed the relation-back issue. We held that although capacity to sue is governed by state law (via Federal Rule of Civil Procedure 17(b)), Federal Rule of Civil Procedure 15(c)--not state law--controls the issue whether a plaintiff's local registration will relate back to the time the complaint was filed.[3] Rule 15(c) is very flexible, and the South Carolina Supreme Court in Thomas expressly relied on Rule 15(c) of the South Carolina Rules of Civil Procedure, which mirrors Federal Rule 15(c), in overruling Glenn. Had the district court below looked to the liberal (federal) Rule 15(c), as Davis indicates it should have, the court likely would have granted Ms. Myelle leave to register in South Carolina and amend her complaint accordingly. Indeed, Davis suggests that it would be an abuse of discretion had the district court not done so.[4]
 
 
 17
 In any event, the district court below (i) erroneously suggested it was forced to dismiss on the basis of a state common law rule that has since been scuttled by the state's highest court and (ii) arguably erred in applying state law on the relation-back issue. But the majority here affirms the dismissal of this wrongful death action. Why? Because Ms. Myelle has not yet filed in the probate court copies of her Pennsylvania appointment and bond. Ante at 414-15 and n.5. But, of course, without a crystal ball to anticipate that the Supreme Court of South Carolina would suddenly reverse course (ten days before we heard argument), there would have been absolutely no reason for Ms. Myelle to register locally; under Glenn her complaint was a nullity. The district court essentially told Ms. Myelle not to bother registering in South Carolina because that registration could not relate back to cure her allegedly deficient complaint, but the majority in effect says that Ms. Myelle should have disregarded the district court's ruling and South Carolina law and registered anyhow.[5]II.
 
 
 18
 The majority does not suggest, nor could it, that we are compelled by law to affirm the dismissal of this case. Because dismissal is not required, I would remand to allow Ms. Myelle to qualify in South Carolina and to amend her complaint to reflect her capacity to sue. This would give plaintiffs their day in court on the merits and put the proper end to the expensive procedural wrangling that has consumed this case for far too long. Again, I respectfully dissent.
 
 
 
 [1]
 At the outset, Myelle filed three separate actions--one in the Eastern District of Pennsylvania, another in the Bucks County (Pa.) Court of Common Pleas, and a third in the McKean County (Pa.) Court of Common Pleas. The state court actions were removed to the Eastern District of Pennsylvania on defendants' motions, and the three actions were at that point consolidated into one
 
 
 [2]
 Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."
 
 
 [3]
 Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."
 
 
 [4]
 See, e.g., H.L. Green Co., Inc. v. MacMahon, 312 F.2d 650, 654 (2d Cir.1962) (following Sec. 1404(a) transfer of case from New York to Alabama, Alabama court directed to "apply New York law (including any relevant New York choice-of-law rules).") (quoted in Van Dusen, 376 U.S. at 633, 84 S.Ct. at 818)
 
 
 [5]
 At argument, the panel was presented with a recent opinion of the South Carolina Supreme Court, Thomas v. Grayson, --- S.C. ----, 456 S.E.2d 377 (1995). Thomas held that where a foreign personal representative files the requisite documents, but does so after the statute of limitations for bringing a wrongful death action has expired, the untimely filing relates back, such that the wrongful death action is allowed to proceed. Thomas is of no help to Myelle, however, because, as counsel conceded at argument, Myelle still has not bothered to comply with the South Carolina registration requirements
 The dissent would have us excuse Myelle's continued failure to register, and remand to the district court "with instructions to grant Ms. Myelle leave to register locally and to amend her complaint to reflect her capacity to sue [under Thomas ]." Post at 416. This, we decline to do. Myelle has made a strategic decision not to register her Pennsylvania appointment in South Carolina--presumably because, as the dissent suggests, to file the requisite papers would significantly undermine Myelle's argument that she was not required to do so. See post at 416. Such strategic decisions have consequences, and we simply are not so willing as is the dissent to relieve Myelle of the consequences of this particular decision. The interest of the judiciary and the defendants in not having this case tried piecemeal, and the substantial interest of the state of South Carolina in having its laws obeyed, are more than sufficient to overcome Myelle's litigation strategy interests.
 
 
 [1]
 Glenn held that when a wrongful death plaintiff lacks the capacity to sue in South Carolina at the time the complaint is filed, the wrongful death action is a "nullity" and cannot be resurrected under the "relation back doctrine." See 174 S.E.2d at 159
 
 
 [2]
 In hindsight, then, if the district court below could have had the benefit of Thomas, defendants would have had a tough time pressing the argument they made in reply to plaintiffs' opposition to their motion to dismiss
 Plaintiff urges this Court to permit her to register her Pennsylvania appointment pursuant to Sec. 62--204 [allowing registration of foreign representatives] and asserts that this registration should relate back to the time the action was initially filed. Plaintiff concedes that the three-year statute of limitations has expired, and that such "relation back" attempts have been disallowed in prior cases, but endeavors to distinguish these cases on the ground that they were decided prior to the enactment of Sec. 62--204. This distinction fails.... Under that case law, Plaintiff's lack of legal capacity renders the present action a complete nullity. Glenn v. E.I. DuPont De Nemours & Co., supra. The procedural shortcut made available by Sec. 62--204 cannot be used, after the statute of limitations has run, to revive a lawsuit which, in the eyes of the law, was never commenced in the first place.
 JA 327-28 (reply memorandum) (citations omitted). Compare Thomas, 456 S.E.2d at 379 (discussing how Sec. 62-4-204 changed the common law in South Carolina).
 
 
 [3]
 Rule 15(c) says, for example, "An Amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]"
 
 
 [4]
 To be sure, plaintiffs here did not actually file a motion for leave to amend their complaint. But by urging the application of the relation-back doctrine, plaintiffs obviously were contending that if Ms. Myelle had to register locally, they should be allowed to amend their complaint to reflect her capacity to sue
 
 
 [5]
 In cases transferred pursuant to 28 U.S.C. Sec. 1404(a) on forum non conveniens grounds, the transferor forum's choice-of-law rules apply. Ante at 413-14; Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Accordingly, after a section 1404(a) transfer, a foreign representative plaintiff can argue (i) that the relevant transferor forum's choice-of-law rules point to the use of the transferor forum's law on capacity to sue and (ii) that therefore, as a matter of law, registration or appointment in the transferee forum would not be required. But under today's decision, the foreign representative will have to register in the transferee forum out of fear that the transferee court might apply the transferee forum's capacity-to-sue rules and dismiss for failure to register. Thus, today's decision will result in unnecessary local registrations. Moreover, once the foreign representative registers locally (as the majority says Ms. Myelle should have done), courts will be urged to dismiss as moot any legal argument that local registration was not required. So the effect of today's ruling is that in federal cases transferred to our circuit, a foreign representative will not be able to challenge whether he or she is required to register in the transferee forum